**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James L. PLESS and Michael L.
Cummings, Defendants–
Appellants.**

**Nos. 91–3418, 91–3666.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1992.

Decided Dec. 18, 1992.

John J. Thar, Asst. U.S. Atty., Donna Eide (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

David J. Colman (argued), Bloomington, IN, for defendants-appellants.

Before POSNER and COFFEY, Circuit Judges, and SHADUR, Senior District Judge.[*]

SHADUR, Senior District Judge.

Half brothers James L. Pless ("Pless") and Michael L. Cummings ("Cummings") were convicted in a jury trial of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] In the same trial Cummings was also found guilty of being a convicted felon in possession of firearms in violation of Sections 922(g)(1) and 924(a)(2). Pless and Cummings appeal their convictions, while Cummings also challenges his sentence. We affirm in all respects, save for a partial remand to complete the written record on Cummings' sentence.

*Background*

In June 1990 Cummings had pleaded guilty to methamphetamine possession in a federal court in California. In November of that year Cummings' probation was transferred to Bloomington, Indiana, where Cummings moved into a house at 4750 Robinson Road that Pless had rented for him. On March 25, 1991 agents of the Federal Bureau of Investigation, the Drug Enforcement Agency and officers of the Indiana State Police searched the Robinson Road residence pursuant to a search warrant issued by an Indiana state court magistrate. Fruits of that search were the subject of a later suppression hearing, which we deal with a bit farther on.

On June 12, 1991 a grand jury handed down a three-count superseding indictment in this case. In the first count Cummings, Pless and four others—including Cummings' son Chad, Cummings' adopted daughter Sandy McCormick and Cummings' half brother (Pless' full brother) William—were charged with conspiracy to manufacture methamphetamine in a quantity greater than 1000 grams, in violation of Section 841(a)(1). Under the second count Cummings, Pless and ten others, including William Pless' wife Beth, were charged with conspiracy to distribute methamphetamine in violation of the same statute. In the final count Cummings was charged with being a convicted felon in possession of firearms in or affecting commerce, in violation of Sections 922(g)(1) and 924(a)(2). Cummings, Pless and two others (Michael Starks and Randall Newton) went to trial. Starks and Newton were acquitted, but Cummings and Pless did not fare so well and were convicted on all counts.

Cummings was sentenced to a term of life in prison on each of Counts One and Two and a term of 60 months on Count Three, all to be served concurrently. Pless received concurrent sentences of 188 months on Counts One and Two. Each defendant filed a timely notice of appeal. We have jurisdiction pursuant to Section 3742(a) and 28 U.S.C. § 1291.

Pless raises two issues on appeal:

---

[*] The Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation.

[1] Those two provisions will hereafter be cited simply "Section—," without further reference to Title 21. For simplicity's sake we will also employ the same "Section—" usage for all citations to provisions of the Criminal Code (18 U.S.C.), confident that the material difference in the statutory numbers involved will avoid any potential for confusion.

1. whether the government met its burden of proving beyond a reasonable doubt that he was a knowing participant in the conspiracy; and

2. whether the district court abused its discretion in permitting Pless to respond to a government request to "just tell the story" on cross-examination.

Cummings poses two other issues:

1. whether the evidence obtained pursuant to the search warrant of the Robinson Road residence should have been suppressed because the search warrant was unsupported by probable cause; and

2. whether various aspects of the sentencing, including the sentencing date, denial of writs of habeas corpus ad testificandum, the timing and content of the judge's tentative findings as to disputed factors and the judge's emphatic expression of his view on disputed factors violated Cummings' due process and statutory rights under Fed.R.Crim.P. ("Rule") 32, United States Sentencing Commission Guidelines ("Guidelines") § 6A1.3,[2] and the Local Order ("Local Order") adopted by the judges of the district court to implement the Guidelines.

We address all those questions in turn.

### Sufficiency of Evidence

■ Pless contends that the record evidence cannot support the jury's conclusion that he was a knowing participant in the conspiracy to manufacture and distribute methamphetamine. In weighing the sufficiency of evidence on appeal, we make the familiar inquiry "whether, after viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (emphasis in original)).

■ Even apart from the extraordinarily steep mountain that standard requires any defendant to climb, anyone who wants to preserve such a challenge on appeal must have renewed a motion for judgment of acquittal either at the close of all the evidence or via a post-trial motion within the seven-day period prescribed by Rule 29(c) (*United States v. James*, 923 F.2d 1261, 1267 (7th Cir.1991)). If not, defendant has waived the challenge on appeal, and we may reverse a conviction for insufficiency of the evidence only if there has been a manifest miscarriage of justice (*id.*).

Pless has fallen afoul of that waiver rule. Although his counsel moved for a judgment of acquittal at the close of the government's evidence, the motion was not renewed either at the close of all the evidence or by a post-trial motion. Because Pless has certainly made no showing of a miscarriage of justice, that could end the discussion. But to eliminate any prospect of an inadequate-representation-of-counsel motion at some later date, we go on to make it plain that the evidence was sufficient to support the jury verdict even under the slightly less demanding *Jackson* standard of review.

■ Under Section 846 the essential definition of a conspiracy is an agreement between two or more individuals to commit an offense in violation of the Controlled Substance Act. It is the government's burden to prove that the defendant both knew of the conspiracy and intended to associate himself or herself with the criminal scheme (see *United States v. Sullivan*, 903 F.2d 1093, 1098 (7th Cir.1990)). *United States v. Paiz*, 905 F.2d 1014, 1020 (7th Cir.1990) (citations omitted) teaches that proof short of those elements will not suffice:

> Evidence of "mere association with conspirators, knowledge of the conspiracy, or presence during conspiratorial discussions," without more, will not do the trick. Evidence must be presented "to support the inference that the defendant in some way joined and participated in the conspiratorial scheme."

Only a brief review of the evidence is needed to scotch Pless' contention. He himself admitted that he was paid on two occasions to go to a chemical distributor in

---

**2.** We cite throughout this opinion to the version of the Guidelines effective November 1, 1990 (applicable both at the times the offenses were committed and at the time of sentencing).

Chicago to pick up "a package"—crystal iodine. Although he denied knowing the contents or intended use of the package, Pless admitted that he lied to the clerk at the chemical distributor's place of business about needing the chemical for horses. Pless maintained that he was picking up the package for William and Beth Pless, not Cummings. But others testified both (1) that Cummings had asked and had paid Pless to make the pickup and (2) that Cummings needed the crystal iodine for the methamphetamine manufacturing process.

Beth Pless also testified that Pless had offered to sell some methamphetamine to a third person, that he had asked her to sell some methamphetamine for him and that he had driven a van full of Cummings' laboratory equipment onto remote property that Pless owned after Cummings and others had dismantled the laboratory for fear of discovery. Other testimony showed that Pless willingly would have sold methamphetamine and that he had bragged about how much money he would make selling it. Cummings' adopted daughter Sandy McCormick testified that Cummings had called Pless to help clean up a leak in the laboratory and had also called him to help dismantle the laboratory when he feared a police raid.

Surely a rational jury could have found beyond a reasonable doubt on that evidence that Pless knowingly participated in the scheme to manufacture and distribute methamphetamine. Indeed, the rational juror would have had to strain mightily to reach any other conclusion.

### Admission of Evidence on Cross Examination

■ Pless also argues that the district court erred in overruling his objection to the government's "just tell the story" question posed to him on cross-examination. Pless contends that thus calling on him to describe in narrative form the untrue story that he had told to the chemical distributor in Chicago was too broadly framed and hence unduly prejudicial.

■ On such evidentiary matters we give special deference to the trial court,

reversing the district judge's decision to admit testimony only where there has been a clear abuse of discretion (*United States v. Allen*, 930 F.2d 1270, 1273 (7th Cir. 1991)). That is not at all the case here: Fed.R.Evid. 611(a) provides district judges with authority to allow testimony in narrative form rather than as answers to specific questions (see 3 Jack Weinstein and Margaret Berger, *Weinstein's Evidence* ¶ 611[01], at 611–19–611–20 (1991)), and we ourselves have said that "[t]here is ... nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent information in a narrative form as long as it stays within the bounds of pertinency and materiality" (*United States v. Garcia*, 625 F.2d 162, 169 (7th Cir.1980)). Indeed, both *Weinstein's Evidence* and *Garcia* suggest that the narrative may well be the preferable form in some respects.

Even were the rule otherwise than we have stated, Pless could not prevail on this issue. Here is the exchange between the prosecutor and Pless on cross-examination:

Q: Okay. Tells [sic] us about the horses.

A: That was just a story that Bill and Beth told me to tell.

Q: Just tell the story.

A: Just said the stuff I was going to pick up was for the horses' hooves in the wintertime, the horses' hooves.

[Counsel for Pless objected, and the court overruled the objection].

A: I said during the winter, the horses' hooves would split or and get infected. The medicine I was going to get was going to heal them. The horses would get so sick it would kill them without the medicine. That's what they told me.

Those few sentences that Pless used to relate his tale about the horses remained well within the bounds of pertinency and materiality. Moreover, Pless has made no showing of undue prejudice calling for exclusion under Fed.R.Evid. 403. On direct examination he had already admitted to telling a false story about needing the chemical for horses, and several of the

government's witnesses had also alluded to his having told such a story. In the few quoted sentences Pless merely fleshed the account out in somewhat greater detail, creating no potential for undue prejudice or confusion of the issues in the jurors' collective minds.

Thus neither issue raised by Pless calls for serious consideration. We turn to codefendant Cummings.

### Suppression of Evidence

 Cummings contends that probable cause did not support the warrant for the search of the Robinson Road residence, so that the evidence found at that residence and used by the government in its case-in-chief should have been suppressed. We have resolved for our Circuit the standard of review for such probable cause determinations as one of affirmance absent clear error by the issuing magistrate (*United States v. Spears*, 965 F.2d 262, 269–70 (7th Cir.1992), since then followed and applied in *United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir.1992)). But even had some intermediate standard of review (something between de novo and clearly erroneous) been called for, as suggested by the minority who dissented from the court's denial of en banc consideration of *Spears* 965 F.2d at 282–83, the result would have been the same—for under *any* standard the affidavit presented by Officer Helms did provide probable cause for a search warrant.

*Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) prescribes that any court reviewing a decision to issue a warrant must "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates, id.* abandoned the two-pronged *Aguilar–Spinelli* approach to the issuance of warrants in favor of a totality-of-the-circumstances analysis:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

In our review of that process, even doubtful cases are to be resolved in favor of upholding the warrant (*United States v. Griffin*, 827 F.2d 1108, 1111 (7th Cir. 1987))—a concept that, even though not expressed in "clearly erroneous" terms in *Griffin*, is essentially reconfirmed by *Spears*.

Cummings argues that the information contained in Officer Helms' affidavit lacked indicia of reliability, pointing out that the government neither named its three informants nor established any informant's basis of knowledge. Cummings further contends that the informants' stories were uncorroborated by independent investigation and that the information was impermissibly stale, because it either had been provided to the officers months before submission of the affidavit or had failed to mention a time frame at all.

In brief, the affidavit supplied by Officer Helms on March 22, 1991 recited that an anonymous informant and two other unnamed informants had told Officer Helms, Sergeant Barrett and Special Agent Blackketter that Michael Cummings was manufacturing methamphetamine at the Robinson Road residence; that Billy and James Pless, Charlie Starks and David Koontz were involved as well; and that Pless and perhaps others had gone to Chicago to pick up "crystal" on more than one occasion. Officer Helms also set forth the results of the officers' investigations—that is, that Cummings had been charged in California with manufacturing methamphetamine and had pleaded guilty to possession. Investigation also revealed that Cummings' official residence, which according to the terms of his probation could be searched at any time, was listed as his mother's address on Cedar Bluff Road, and that the phone and mail delivery at the Robinson Road residence were listed in his mother's name.

Under the *Gates* totality-of-the-circumstances standard, the affidavit provided the required substantial basis for concluding

that probable cause existed. Information contained in the warrant, derived from three different informants and the officers' independent investigation, was sufficient to support the conclusion that equipment for the manufacture of methamphetamine would be found at the Robinson Road residence.

As for Cummings' contention that the affidavit failed to establish the veracity and basis of knowledge of the informants, it is true that one informant listed in the affidavit was anonymous while two others were unnamed but known to the officers. But the anonymous caller demonstrated an intimate familiarity with details of the activity at Robinson Road. On March 19, 1991 the caller gave Officer Helms the particulars already listed in this opinion from the officer's affidavit of a few days later, including the specific information that Pless had gone to Chicago on March 16 to pick up "crystal" and that he usually drove different cars and changed license plates. In addition the caller stated that he or she had been in the house in January and had seen guns there.

Nor did reliance on the anonymous caller's tip present a bootstrapping problem: It was substantially corroborated by the officers' independent investigation and by information from the other informants. Thus Officer Helms' independent investigation corroborated some of the anonymous caller's facts. And although the admission of "bad man" evidence at trial poses a Fed.R.Evid. 404(b) problem, in the probable cause context it is relevant that the probation department report reflected that Cummings had pleaded guilty in California to possessing methamphetamine and possessing a sawed-off weapon—those facts could rationally be viewed as enhancing the probable accuracy of a report that Cummings was manufacturing methamphetamine (cf. *United States v. Fairchild,* 774 F.Supp. 1544, 1556 (W.D.Wis.1990)). Another consistency with the informant's submission (albeit minor) was that Cummings' mother's address was the official address listed

for Cummings with the probation office. And the corroboration from other informants was also relevant—a "reliable informant who ha[d] given him credible information in the past" told Sergeant Barrett on one occasion that Cummings was manufacturing methamphetamine and on another that he had methamphetamine drying in the attic of the Robinson Road residence.[3]

■ Cummings' second objection, that the informants lacked first-hand knowledge, fares no better. In terms of the applicable legal principles, although an informant's first-hand observations would generally be entitled to greater weight, clearly probable cause may be founded on hearsay reports (Rule 41(c)(1); *Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978)). In that respect *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332 instructs that magistrates should inquire into the "basis of knowledge" and "veracity" of persons supplying hearsay information.

In this case the anonymous informant, whose call was stimulated by concern for the informant's children who were using the drug, had intimate knowledge of Cummings' and Pless' activities and had assertedly been inside the house in January. As already stated, the information was corroborated by police investigation and by another informant who Sergeant Barrett claimed was reliable. Sergeant Barrett's informant had provided credible information in the past, and that informant's tale was corroborated as well. Thus the magistrate could properly decide that what may have been hearsay information was nonetheless reliable and supported a finding of probable cause.

■ Finally, Cummings objects that the information in the affidavit was impermissibly stale. Age of inculpatory information is of course one element that magistrates should consider in determining whether probable cause exists (*United States v. Lamon,* 930 F.2d 1183, 1187–88 (7th Cir.

---

3. It is unnecessary to take account of another corroborative factor, this one stated in particularly weak form in the Helms affidavit:

Special Agent Blackketter received information from a seperate [sic] informant which matches the information given.

1991)). But age is only one factor, and "[i]f other factors indicate that the information is reliable and that the object of the search will still be on the premises, the magistrate should not hesitate to issue the warrant" (*United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987)). Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity (*Lamon*, 930 F.2d at 1188).

That latter characterization certainly fits the Helms affidavit. Although one of the informants had given Officer Helms and Sgt. Barrett some of the information about three months before the preparation of the affidavit, the most critical aspects must fairly be read as referring to current activity.[4] Officer Helms submitted the affidavit to the magistrate on March 22. Two days earlier the anonymous caller had told Officer Helms that Cummings "was making crank in the basement" and that on March 16 James Pless had gone to Chicago to pick up "crystal" for the manufacturing process. Similarly, on March 20 Sgt. Barrett's informant told him of having learned on March 18 that Cummings had crank drying in the attic. All in all, the age of the information received by the officers was not critically deficient, especially in the context of a laboratory that is likely to be an elaborate and semi-permanent fixture.

■ Thus the warrant was unquestionably supported by the necessary probable cause. But even had that not been the case, the district court's refusal to suppress the evidence obtained in the search would not provide a basis for reversal of Cummings' conviction. Under the good-faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), even evidence that has been obtained pursuant to a search warrant unsupported by probable cause is suppressible only in limited circumstances (*id.* at 926, 104 S.Ct. at 3422):

In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

Here Cummings has not argued (nor could he) that the magistrate abandoned his detached and neutral role. And as for the second branch of the *Leon* inquiry, it cannot be said that Officer Helms was dishonest or reckless in preparing the affidavit or that he could not have relied in good faith on the magistrate's determination of probable cause.

In considering whether the officers acted in good-faith reliance, we ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization" (*Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23; *United States v. Malin*, 908 F.2d 163, 166 (7th Cir.1990)). In the ordinary case police officers "cannot be expected to question" a magistrate's determination that probable cause to search existed (*Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987)), and this is just such a case. Given the extent of the information contained in the affidavit, we cannot conclude that it was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (*Leon*, 468 U.S. at 923, 104 S.Ct. at 3420).

And so two independent bases operate to defeat Cummings' challenge to his conviction. Like Pless, he cannot complain of his becoming subjected to the sentencing process. What remains is to consider whether any flaws tainted that procedure.

*Sentencing Hearing*

Cummings argues that the date set for his sentencing hearing involved violations of his due process rights, of Rules 32(a)(1) and 32(c)(3)(A), of Guidelines § 6A1.3(a) and of the Local Order. Cummings also

---

**4.** Cummings proposes a different reading, but it is a good deal less plausible. It is worth remembering that the relevant standard on this issue is one of probable cause, not proof beyond a reasonable doubt.

urges that the judge's conduct at the sentencing hearing and his refusal of Cummings' petitions for writ of habeas corpus ad testificandum violated Cummings' due process rights, Guidelines § 6A1.3 and Rules 32(a)(1), 32(c)(3)(A) and 32(c)(3)(D). Analysis calls for the repudiation of all those contentions except for one nonsubstantive (but important) point.

### 1. Sentencing Date

■ Cummings first takes umbrage at the fact that he received the presentence investigation report ("PSI") on September 27, 1991,[5] yet his sentencing took place less than three weeks later—on October 15.[6] Local Order ¶ 3 requires that the PSI be disclosed to the defendant at least 30 days before the scheduled sentencing hearing, unless the minimum period is waived by the parties and agreed to by the court. Cummings did not waive the 30–day time period—on the contrary, his counsel filed a motion for continuance on the basis of the Local Order and objected again to the expedited proceeding at the sentencing hearing. Local Order ¶ 11 does provide that the rule's deadlines may be modified for good cause shown, but the district judge did not state at sentencing that he had shortened the deadline for good cause shown by either party.

Although no explanation has been given for noncompliance with the Local Order ¶ 3 timetable, Cummings has failed to show that he was prejudiced in any way by the 11–day deficit. There may be circumstances in which it is problematic to invoke a harmless error rule (situations, for example, where reconstructing what would have

happened had no error been committed involves sheer speculation), but this is surely not one of them (see Rule 52(a) ("[a]ny error ... which does not affect substantial rights shall be disregarded")). Cummings submitted his objections to the PSI to the prosecution and the court, and the district judge addressed all of Cummings' objections at the sentencing hearing. Cummings has made no proffer, either at the sentencing hearing or before us, of evidence that he could have procured or developed in the extra time that might even arguably have made a difference in his sentencing. Hence the error was unquestionably harmless.[7]

### 2. Denial of Writs of Habeas Corpus ad Testificandum

Next Cummings contends that the district court's refusal to grant four writs of habeas corpus ad testificandum presented on the eve of sentencing also amounted to a denial of due process and an abuse of discretion under Rule 32(c)(3)(A). That too is an empty argument.

■ Due process entitles defendants to fair sentencing procedures, especially a right to be sentenced on the basis of accurate information (see, e.g., United States v. Eschweiler, 782 F.2d 1385, 1387 (7th Cir. 1986)). If a defendant raises the possibility of reliance on misinformation in the PSI, the court must provide an opportunity to rebut the report (United States v. Petitto, 767 F.2d 607, 611 (9th Cir.1985)). That may take a number of forms: by allowing defendant and defense counsel to comment on the report or to submit affidavits or other

---

**5.** Although the PSI was dated September 24, 1991, Cummings claimed not to have received it until September 27.

**6.** Originally sentencing was set for October 4. Cummings moved for a continuance, and although the record does not reflect the grounds on which the date was moved, the sentencing actually took place on October 15.

**7.** Cummings also says that the timing of his sentencing violated Rules 32(c)(3)(A) and 32(a)(1). But Rule 32(c)(3)(A) calls for the passage of ten days between delivery of the PSI and sentencing, and that took place here. Cummings does not describe the manner in which

he claims Rule 32(a)(1) was violated. If he means to imply that the district judge abused his discretion by failing to delay sentencing, he has set forth no reason why the district judge should have done so. Finally, Cummings also asserts that the date set for sentencing failed to provide him an adequate opportunity to present information to the court regarding disputed factors as required by Guidelines § 6A1.3. But we have already said that Cummings has made no showing that he would have been able to present relevant, exculpatory evidence if given more time to do so.

documents, or by holding an evidentiary hearing (*id.*).

 In this instance the district judge's denial of the writs of habeas corpus ad testificandum did not impinge on Cummings' due process rights.[8] To see why, we examine the anticipated testimony of the proposed witnesses.

Two of those witnesses were expected to present evidence countering the assertion that Cummings' had made threats in an elevator of the Marion County Jail. However, the district judge made clear that such alleged threats would not be taken into account in the sentencing. Thus the absence of testimony on the subject was irrelevant.

 Cummings was also denied the opportunity to present witness testimony on the issues of his role in the offense and obstruction of justice. On the first of those subjects Judge Dillin exercised his discretion reasonably by finding (1) that the evidence at trial was sufficient for him to determine Cummings' role in the conspiracy and (2) that William Pless' testifying (again) at sentencing would not facilitate the judge's determination (see *United States v. Zuleta–Alvarez*, 922 F.2d 33, 35–36 (1st Cir.1990) (a sentencing court need not give the defendant an opportunity to resolve disputes unless it first determines that there are relevant facts reasonably in dispute); *United States v. Weston*, 708 F.2d 302, 309 (7th Cir.1983) (no deprivation of due process on ground that district judge relied on trial testimony as basis for sentencing)). And as for the second issue, it was also reasonable to reject James Rawley as a witness about his own role in Cummings' solicitation of the murder of witnesses. Cummings gave no indication, either in his objections to the PSI or at the sentencing, as to the manner in which Rawley would counter the overwhelming evidence that Cummings had obstructed justice by soliciting the murder of witnesses (see *Weston, id.*).

### 3. *Findings as to Contested Factors*

 Cummings also complains that the district court failed to make a finding on his entrapment defense to the obstruction of justice enhancement, in violation of Rule 32(c)(3)(D):

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

That provision serves two purposes: (1) to ensure that the court deals with and responds to a defendant's PSI objections before sentencing him or her; and (2) to provide prison and parole authorities with a clear record of how such disputes were resolved (*Eschweiler*, 782 F.2d at 1387–88).

Cummings charges that the district judge made no finding as to Cummings' defense of entrapment as it bore on the obstruction of justice enhancement. But Judge Dillin allowed Cummings to testify on that precise issue at the sentencing hearing, and he specifically found that Cummings had perjured himself in that testimony, thus indicating that he did not believe Cummings' defense of entrapment. Judge Dillin also made clear his findings on the issue of Cummings' role in the offense. Rule 32(c)(3)(D) has been satisfied in that respect.

But the second purpose of that rule has not been fulfilled here, because the judge made no written findings as to contested

---

**8.** We give no weight to the district judge's stated objection that the writs were filed on the eve of sentencing. As Cummings points out, such criticism of the timeliness of the filing must be discounted in light of the judge's unexplained failure to follow Local Order ¶ 3, with its assurance of a 30–day interval between the issuance of the PSI and the date of sentencing.

factors. Merely attaching an addendum with the defendant's objections to the PSI, as has been done in this case, does not satisfy either the letter or the purpose of the rule. Thus a limited remand is necessary only to permit the attachment of the judge's written determination of the disputed factors to the PSI (*United States v. Fernandez–Angulo*, 897 F.2d 1514, 1517 (9th Cir.1990) (en banc)) and *not* for resentencing (as our cases following *Eschweiler* continue to hold—see most recently *United States v. Villasenor*, 977 F.2d 331, 338–39 (7th Cir.1992)). Alternatively, in lieu of such written findings the district court may of course append the portions of the sentencing transcript that reflect the judge's compliance with the rule.

■■■ Another of Cummings' challenges stems from his claim that he was sentenced in violation of Guidelines § 6A1.3 and Local Order ¶ 9 because the judge failed to provide him with tentative findings as to disputed factors before the sentencing hearing took place. Here is Guidelines § 6A1.3:

> The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. (effective Nov. 1, 1987), notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

Local Order ¶ 9 essentially tracks that requirement.

We have not read that provision as demanding the sentencing judge's preparation of such tentative findings before the sentencing hearing begins (*United States v. Osborne*, 931 F.2d 1139, 1147–49 (7th Cir.1991)). Instead Guidelines § 6A1.3 requires only that the court present a defendant with the opportunity to address disputed factual issues before the court decides on and pronounces the sentence.

That is exactly what happened here: Cummings received the PSI (which contained the probation officer's statement as to factors supporting enhancement) well in advance of the hearing, and he presented written responses, oral argument and his own testimony on the disputed factual issues at the sentencing hearing.

### 4. Judicial Neutrality at Sentencing

■■■■ Finally and relatedly, Cummings complains that the district judge came to the sentencing hearing with an inflexible attitude as to disputed factors, in violation of Cummings' due process right to challenge the disputed factors at sentencing. On that score a defendant's due process entitlement to be sentenced on the basis of accurate information implicates the corollary due-process-based opportunity at the sentencing hearing to challenge factors that are reasonably in dispute (*Eschweiler*, 782 F.2d at 1387). "Rule 32 is not to be complied with merely 'in form'" (*United States v. Spudic*, 795 F.2d 1334, 1343 (7th Cir.1986)). That means a district judge must approach the sentencing hearing with an open mind, and must give meaningful consideration to the presentence report and to objections raised at the sentencing hearing (*id.*; see also *United States v. Long*, 656 F.2d 1162, 1165 (5th Cir.1981)).[9]

But that does not at all mean that a trial judge who has sat through a trial, listening to all the testimony and viewing all the exhibits along with the jury, must bring a tabula rasa to the decision of issues fully aired during the trial and relevant to sentencing as well as guilt. Thus on the issue of Cummings' role in the offense, Judge Dillin said at the sentencing hearing:

> [T]he matter of whether or not Mr. Cummings was the head man of this conspiracy can be determined by the Court quite easily on the basis of the testimony.

---

9. At least one court has held that a sentencing judge's expressed prejudging of disputed factors before argument or evidence at the sentencing hearing violates due process (*United States v. Pugliese*, 805 F.2d 1117, 1124 (2d Cir.1986)). But in *Pugliese* the district judge announced that no matter what the evidence at the sentencing hearing showed, his position would not change.

No such rigidity was involved here. Judge Dillin allowed Cummings to take the stand, and he entertained arguments as to the relevancy of potential witness testimony. But as we say in the next paragraph of the text, he had no obligation to divorce himself from what he had learned during the course of the trial.

And I know who was involved in the conspiracy from that. And I certainly can make a finding as to who the leader of it was without any input from Mr. Bill Pless or anybody else.

And later, as to obstruction of justice, the judge stated:

I have seen the recipe. And from that testimony given at the trial outside the presence of the jury, I find that Mr. Cummings did attempt to obstruct justice by attempting to procure the murder of two prosecution witnesses. And I don't need any additional evidence on that point. I have heard the evidence.

Although the experienced district judge thus expressed some strong feelings at the outset of the sentencing hearing, the record as a whole reflects his opinion that the evidence of Cummings' guilt adduced at trial was overwhelming, and nothing more. Judge Dillin heard argument from counsel and testimony from Cummings, and he gave satisfactory reasons for denying the writs of habeas corpus ad testificandum. As was true in *United States v. Greenman,* 700 F.2d 1377, 1379 (11th Cir.1983), "nothing in the record compels us to conclude that the district judge closed his mind to evidence favorable to appellant before the sentencing proceedings were concluded."

### Conclusion

Accordingly, the jury's convictions of Michael L. Cummings and James L. Pless and the district court's sentencing of Michael L. Cummings are AFFIRMED. We remand only for the limited purpose of the district court's compliance with the attachment provision of Rule 32(c)(3)(D).