**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose R. MARTINEZ, Defendant–**
**Appellant.**

**No. 02–1494.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 2003.

Decided March 24, 2003.

Rehearing and Rehearing En Banc Denied April 21, 2003.

Before RIPPLE, EVANS, and WILLIAMS, Circuit Judges.

ORDER

A jury convicted Jose Martinez on charges of conspiring to distribute crack cocaine and a substantive count of crack cocaine possession. He appeals, raising only the legality of the search that resulted in the gathering of the bulk of the evidence that was used to convict him. Because Martinez doesn't challenge the sufficiency of the evidence supporting his conviction, we will only note the facts concerning the search issue.

In September 2000, a magistrate judge issued a search warrant for premises described as "A red, wood-framed addition,

which has a white door that faces west, and is believed to be a separate apartment attached to the rear of the residence at 436 West Poplar, Harrisburg, Illinois." The warrant authorized a search of the residence for "concealed property, namely, crack cocaine, United States currency including pre-recorded monies, scales, drug paraphernalia, packaging materials and other indicia of illegal drug activity, drug records including notes and memos of amounts paid and quantities sold, and bills, papers, and documents showing the identity of the occupants, which is evidence of a criminal offense, namely, the knowing distribution, and possession with intent to distribute, cocaine base, commonly known as 'crack cocaine,' in violation of Title 21, United States Code, Section 841(a)(1)." With warrant in hand, law enforcement officers went to the residence at 436 West Poplar to execute the search.

Martinez was at the residence during the search with, unfortunately for him, crack cocaine on his person. In the residence itself, law enforcement officers found some 75 grams of crack in the refrigerator, scales for weighing drugs, plastic baggies, and some marijuana.

After the search, Martinez told conflicting stories, but eventually he said he wanted to cooperate with law enforcement officers. Among other things, he told the officers that some $2,500 was hidden inside the residence. Officers then returned to the residence and found the money right where Martinez said it would be. Martinez made more incriminating statements after the officers returned from their second trip to the 436 residence.

Although there is no doubt that the search in this case would be upheld under the "good faith" exception to the exclusionary rule if the search warrant Martinez attacks were actually defective, *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we need not rest our decision on the exception because the rule requiring a demonstration of probable cause for the issuance of the warrant was not breached.

The magistrate judge issued the search warrant based on a detailed affidavit from Tim Kirkham, a Special Agent with the FBI. The affidavit detailed activities of an informant (the "CS," for "confidential source," in the affidavit) who was working with law enforcement officers to build a case against a nest of drug dealers. Here are some of the allegations (we paraphrase them) in the Kirkham affidavit, with the information relating, directly or indirectly, to the "436 residence" in bold:

On September 13, 2000, immediately after the CS, who had proven reliable, purchased $300.00 worth of crack cocaine from MICHAEL HELTON in Harrisburg, IL, law enforcement agents followed HELTON directly back to the **436 Residence**.

On the same date, a couple of hours later, the CS purchased $400.00 worth of crack cocaine from MICHAEL HELTON in Harrisburg, IL. Once again, immediately after the transaction, law enforcement agents followed HELTON directly back to the **436 Residence**.

On September 24, 2000 (the day before the search warrant was issued), the CS advised Special Agent Kirkham that HELTON told the CS that HELTON was going to be receiving a large quantity of crack cocaine. HELTON told the CS that HELTON was "set up" (had a base of operations) near a specific Huck's store in Harrisburg, Illinois. **The 436 Residence is located less than 1 block from that very same Huck's store described by HELTON.**

On September 25, 2000, the CS purchased $400.00 worth of crack cocaine from MICHAEL HELTON in Harris-

burg, IL. Prior to the transaction, law enforcement agents surveilled HELTON leaving the 436 Residence. HELTON went directly from the foregoing described residence to the location where the crack cocaine transaction with the CS took place.

During the September 25th transaction, HELTON advised the CS that HELTON had 3 1/2 ounces of crack cocaine left to distribute. Immediately following the crack cocaine sale to the CS, law enforcement agents followed HELTON directly back to the 436 Residence.

Martinez's argument is straightforward, but unpersuasive. He says that the Kirkham affidavit fails to establish a nexus between drug dealing and the 436 residence. It offers no evidence, says Martinez, that Helton used the 436 residence as a "base of operations." With this observation, we cannot agree.

The magistrate judge here could issue the warrant if he had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). And we give deference to a magistrate judge's decision to issue the warrant unless we believe that the judge was clearly in error. *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir.1992). Finally, as *Gates* instructs, the duty of the magistrate is to only make a practical, common-sense decision whether, given all the circumstances, there exists a fair probability that contraband or evidence of a crime will be found in a particular case. The test was satisfied here.

As Judge Foreman noted in rejecting Martinez's challenge to this warrant,

> Common sense tells the Court that a drug seller must visit the location where he keeps his drugs and drug-related items some time before a drug sale in order to pick the drugs up, and that a drug seller must return to the location where he keeps the proceeds of the sale some time after the sale to deposit his ill-gotten gains. Despite Martinez's protestations to the contrary, the Court finds that it was completely proper for Magistrate Judge Frazier to conclude that a drug seller would go *directly* to or from his drug operation "set up" before or after a drug transaction."

We agree with the district judge's observations. In addition, the frequency with which Helton visited the 436 residence close to the times of his known drug transactions adds to the reasonableness of the magistrate's conclusion that evidence of drug sales would probably be found there.

For these reasons, we think the search warrant in this case is antiseptic and thus immune to Martinez's attack upon it. From this finding, of course, flows the logical conclusion that the post-search statements Martinez gave to the officers were not suppressible as fruit of the poisonous tree.

Martinez's final argument relates to the district court's decision to permit the jury to hear, under Rule 404(b) of the Federal Rules of Evidence, evidence about his prior drug-dealing activities under Rule 404(b) of the Federal Rules of Evidence. We reject this argument as well. The evidence was relevant to the issues of his knowledge, intent, motive, and lack of mistake, and showed a prior drug-dealing relationship between Martinez and a coconspirator, Luis Diaz. In addition, the district judge gave the jury an instruction concerning the limited purposes for which the evidence could be used.

AFFIRMED.