In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3363

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ONDRAY PULLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-CR-937—**Virginia M. Kendall**, *Judge*.

ARGUED NOVEMBER 4, 2009—DECIDED FEBRUARY 17, 2010

Before CUDAHY, FLAUM, and EVANS, *Circuit Judges*.

CUDAHY, *Circuit Judge*.  Ondray Pulley pleaded guilty to one count of wire fraud related to a scheme to defraud the United Airlines Employees' Credit Union (UAECU). He was sentenced to 87 months' imprisonment and ordered to pay restitution. Pulley now appeals, arguing that the government's lack of candor at his co-defendant's sentencing proceedings caused the district court to make significant procedural errors at Pulley's

sentencing. Specifically, he contends that the district court, having determined at the sentencing of his co-defendant Anthony Anderson that Anderson was credible, did not want to reverse this determination. In Pulley's opinion, the district court was therefore forced into making an impossible finding at Pulley's sentencing that both Pulley and Anderson were accurately testifying even though their stories conflicted. Pulley also challenges the district court's sentence as unreasonable.

We affirm because the district court did not commit procedural error in the course of Pulley's sentencing proceedings, and it appropriately considered the relevant § 3553(a) factors. It also did not err in sentencing Pulley at the high end of the applicable Guidelines range.

## I. Background

Pulley defrauded credit unions for many years. The scheme unfolded as follows. First, Pulley and Anderson obtained the personal identifying information (social security number and the like) of a Chicagoland area United Airlines employee and opened an account at the credit union UAECU. Next, Pulley used several other victims' identifying information to add joint owners to the account. After securing counterfeit checks, Pulley and Anderson deposited money into the account, procured debit cards in the victims' names, and transferred money drawn from the victims' actual bank accounts into the fraudulent UAECU account. Then, Pulley and Anderson flew to Las Vegas (using proceeds from the account) to cash in on their scheme. They

advanced themselves more than $100,000 while visiting various posh Las Vegas hotels and casinos, ate a few meals and divided the proceeds—Anderson received well less than half. The two were indicted in connection with this scheme on December 13, 2006 on several mail and wire fraud counts, and Anderson was also indicted for a fraud on the Members' Advantage Credit Union (Members' Advantage). Whether Pulley was involved in the Members' Advantage scheme became a factual dispute addressed in a long series of evidentiary sentencing hearings.

By April 2007, Anderson had agreed to cooperate with the government and met with government representatives several times throughout the year. Pulley's case continued toward trial, and the government planned to have Anderson testify against him. Anderson eventually entered his plea in July (after several scheduling conflicts).

Anderson was sentenced on November 13, 2007. At sentencing, the government explained that, despite his significant criminal history, Anderson's life appeared to be on the right track, and the government had not had any difficulties with him. After noting his extensive criminal history, the district court granted the government's § 5K1.1 motion based on Anderson's cooperation, his successful efforts to reform himself after suffering from a serious medical condition while serving a prior prison term, and on his prompt and forthright cooperation in the government's investigation. Significantly for this appeal, the government did not mention

to the district court the dispute regarding Pulley's involvement in the Members' Advantage scheme, an issue that called into question Anderson's credibility, or inform the court that it knew that Anderson had purportedly attempted to contact a witness. As of the date of Anderson's sentencing hearing, the district court had already received written filings prepared for Pulley's sentencing hearing detailing the dispute in question. At the close of Anderson's sentencing hearing, the district court accepted the parties' agreed-upon sentence of 38 months' imprisonment as well as restitution, jointly and severally with Pulley, in the amount of $190,000, including amounts due to both UAECU and Members' Advantage. Thirty-eight months was below the applicable Guidelines range of 57 to 71 months.

Pulley had entered his plea of guilty on July 5, 2007. His sentencing was originally scheduled for October 3, 2007, before Anderson's, but was continued on multiple occasions, initially at Pulley's request.[1] Prior to sentencing, Pulley filed objections to the presentence investigation report taking responsibility for a fraudulent scheme at Affinity Credit Union (Affinity) and denying his involvement in the Members' Advantage scheme. The Affinity scheme had not been noted in the presentence report and therefore was not part of the applicable Guidelines range calculations. Without these amendments, Pulley's advisory Guidelines range was 57-71

---

[1] Typically, in the Northern District of Illinois, the cooperating co-defendant is sentenced second.

months. Including the Affinity loss ($150,000) and excluding the Members' Advantage loss ($120,000), the loss amount from the UAECU scheme and other relevant conduct totaled slightly over $400,000. Pulley's amendments raised his offense level two points and his sentencing range to 70-87 months.

At Pulley's first sentencing hearing (where he was not present, for unknown reasons), on November 14, the district court highlighted the factual conflict between the government and Pulley regarding his participation in the Members' Advantage scheme. The district court reset the sentencing and allowed several more hearings to permit the parties to present witnesses—including Pulley and Anderson—regarding this issue. At the close of the hearings, the district court determined that the government had not met its burden to prove that Pulley participated in the Members' Advantage scheme given the lack of hard evidence and the difference between methods employed in that scheme and those used in Pulley's earlier schemes. It also found, however, that Anderson's testimony, implicating Pulley in the Members' Advantage scheme, was credible based in large part on the consequences of any possible perjury—including the possible revocation of Anderson's plea deal. The district court reconciled its decision to find credible two witnesses' conflicting stories by explaining that it was plausible that two con men with a long history together, like Anderson and Pulley, could have gotten confused

about events that occurred many years in the past.[2] Consistent with these findings, the district court amended the restitution order entered at Anderson's sentencing to rescind Pulley's joint liability. Further, the court declined to accept the government's position that Pulley should be denied credit for acceptance of responsibility and instead receive a two-level increase for obstruction of justice for failure to admit his participation in the Members' Advantage scheme. Pulley was then sentenced to 87 months.

## II.  Standard of Review

Whether the district court followed proper sentencing procedure is a legal question reviewed de novo. *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). Factual findings are reviewed for clear error. *United States v. Heckel*, 570 F.3d 791, 793 (7th Cir. 2009). Likewise, we defer to a district court's determination of witness credibility, which can virtually never be clear error. *United States v. Acosta*, 534 F.3d 574, 584 (7th Cir. 2008). The substantive reasonableness of a sentence is reviewed for an abuse of discretion and a correctly calculated, within-Guidelines sentence is entitled to a presumption of reasonableness. See *Rita v. United States*, 551 U.S. 338, 347

---

[2] Pulley characterizes the district court's findings of Pulley's and Anderson's credibility as declaring a "tie." The district court does not use this language, and this characterization does not fully reflect the district court's reasons for finding both witnesses credible despite their conflicting stories.

(2007); *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009).

### III. Discussion

**1.  The district court approached the sentencing hearing with an open mind.**

A district court judge must approach a sentencing hearing with an open mind and rely on meaningful consideration of the evidence presented at the hearing. See *United States v. Pless*, 982 F.2d 1118, 1129-30 (7th Cir. 1992). Likewise, the defendant has a due process right to be sentenced on the basis of accurate information. See *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006). Thus, if the defendant establishes that the sentencing court relied on critical, inaccurate information when announcing the sentence, a defendant may be granted the remedy of resentencing. See *Jones*, 454 F.3d at 652; *Simonson v. Hepp*, 549 F.3d 1101, 1107 (7th Cir. 2008) (discussing sentencing in the habeas context). Evidentiary standards are, however, relaxed at sentencing, and a sentencing court may permissibly rely on information that has "sufficient indicia of reliability to support its probable accuracy." See *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (internal citations omitted).

Even a district court's unqualified statements about its understanding of a defendant's role in the conduct at issue do not necessarily create reversible error, unless the district court indicates that it has made up its mind

prior to receiving evidence. Compare *Pless* (holding that the district court need not bring a tabula rasa to issues fully aired at trial and relevant to sentencing and, therefore, its strong statements before sentencing did not deny the defendant a fair hearing) with *United States v. Schroeder*, 536 F.3d 746, 753 (7th Cir. 2008) (holding that the defendant was denied a fair sentencing hearing because the district court announced its conclusion as to a relevant loss before receiving the defendant's evidence and appeared not to consider the defense's arguments).

Pulley contends his case is more like *Schroeder* than like *Pless.* We disagree. In the present case the district court not only identified the factual conflict at the outset of Pulley's sentencing, but it held exhaustive hearings and heard Anderson's and Pulley's testimonies to explore the disputed facts. In the end, the district court found Anderson credible not because it had already done so at his sentencing, but because it found that his story was essentially internally consistent and that he had no motive to lie. The district court amply demonstrated that it approached Pulley's sentencing with an open mind.

Pulley also contends that there was overwhelming evidence that he did not participate in the Members' Advantage scheme, implying that the district court was wrong to find Anderson credible. As we noted above, a district court's credibility determinations are rarely overturned and, in the present case, where the district court provided sufficient reasons to find Anderson credible, we cannot agree that the district court erred.

## 2. Pulley has not provided sufficient evidence of the government's breach of its duty of candor to require resentencing.

Pulley further argues that the government breached its duty of candor and therefore the case should be remanded. He notes that, at Anderson's sentencing, the government did not raise or deny a factual conflict as to Pulley's participation in the Members' Advantage scheme even though, at Anderson's sentencing, the district court found Pulley jointly liable for Anderson's fraud in that scheme. Also, the government did not inform the court that Anderson had purportedly attempted to contact a witness.

It was, however, the government's consistent position at both sentencing hearings that Pulley participated in the Members' Advantage scheme, based, in part, on Anderson's testimony. Again, the district court found that the government had not met its burden to prove that Pulley participated in the Members' Advantage scheme. While the district court chose not to accept the government's version of events, that finding does not imply that the government's position was based on known falsehoods, and Pulley has not provided evidence sufficient to prove that the court's findings were clear error or, more importantly, that it relied on the government's version of events in sentencing him.

In addition, Pulley contends that the government breached its duty of candor by suggesting that Pulley

only accepted responsibility for schemes for which the government had hard evidence. Again, however, whether Pulley only admitted schemes for which there was hard evidence is a fact that the district court had adequate opportunity to explore throughout the hearings and therefore, whether or not the government breached its duty of candor, the district court did not blindly rely on the government's purported contentions in sentencing Pulley. In addition, whether Anderson contacted a witness is relevant to his sentencing, not Pulley's, and Pulley has not demonstrated that, even if the government should have brought out this fact at Anderson's sentencing hearings, this error infected his own sentencing. As discussed below, the district court properly sentenced Pulley based on an individualized consideration of the relevant statutory factors, not on irrelevant facts.

Likewise, other courts have determined that a breach of candor at a cooperating defendant's sentencing is unlikely to affect the outcome of the other defendant's trial when the information comes out at trial and relevant witnesses are subject to cross-examination. *United States v. Casas*, 425 F.3d 23, 40-41 n.21 (1st Cir. 2005) (declining to apply the exclusionary rule to testimony by the cooperating defendant at the complaining defendant's trial). Given the hearings that the district court conducted, and the factors the district court actually relied upon during sentencing, Pulley has not met his burden to prove that, even if the government breached its duty of candor, the sentencing court relied on impermissible factors in sentencing him.

### 3. The district court's sentencing procedure is sound and the sentence is substantively reasonable.

Pulley also argues that the sentencing court erred by failing to address his arguments related to consideration of the 18 U.S.C. § 3553(a) factors and by imposing an unreasonably high sentence.

We note that the district court properly calculated the applicable Guidelines range. Once the district court determined that there was insufficient evidence of Pulley's participation in the Members' Advantage scheme, the court determined the offense level based on a base-offense level of 7, an enhancement of 14 based on a loss amount of more than $400,000 but less than $1 million, see U.S.S.G. § 2B1.1 (2006), and a 2-level enhancement for unlawful use of another's identification, see U.S.S.G. § 2B1.1(b)(10)(C)(i). The district court subtracted 3 levels for acceptance of responsibility and a timely plea, see U.S.S.G. § 3E1.1(a)-(b), for a total offense level of 20. That level, combined with an undisputed category VI criminal history, produced a Guidelines imprisonment range of 70 to 87 months, with a statutory maximum of 30 years. See 18 U.S.C. § 1343. The district court sentenced Pulley to the high end of the Guidelines range.

Pulley argues that the district court procedurally erred by failing to consider several of his meritorious arguments. Specifically, Pulley contends that the district court failed to consider his difficult upbringing, his extraordinary acceptance of responsibility and the unwarranted disparity between his sentence and Anderson's. We

disagree.[3] To comport with proper sentencing procedure, the district court must review the § 3553(a) factors and provide a record for us to review but it need not explicitly articulate conclusions with respect to each factor. See *United States v. Panaigua-Verdugo*, 537 F.3d 722, 728 (7th Cir. 2008). The court is not required to consider every "stock" argument, but it must address the defendant's principal arguments. See *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009); *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009) (explaining that a district court may pass over, without discussion, arguments that are made as a matter of routine); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). "A short explanation will suffice where the context and record make clear the reasoning underlying the district court's conclusion." *United States v. Schroeder*, 536 F.3d at 755 (citing *Rita*, 551 U.S. at 358). We conclude that the district court adequately considered Pulley's principal arguments.

It addressed Pulley's criminal history and reviewed the sentencing report that revealed his difficult

---

[3] Pulley also contends that the district court should have taken into account the circumstances of his criminal history category because his criminal history score was barely a category VI. As the district court is required to consider a defendant's history and characteristics, 18 U.S.C. § 3553(a)(1), and the district court fulfilled this requirement, there is no separate need to address the defendant's position within a particular history category separately from the individualized assessment of the defendant.

upbringing. At sentencing, the district court applauded Pulley for his ability to avoid drug abuse despite having close relatives with dependency issues. Given that the district court was aware of Pulley's difficult history, heard his arguments that he did not believe his past caused him to commit his crimes and then proceeded to address Pulley's sentence in the context of the § 3553(a) factors, the district court did not err in failing to provide a lengthy explanation for its decision that Pulley's history and characteristics did not merit him a lower sentence.

The district court also adequately provided reasons for rejecting Pulley's purportedly extraordinary acceptance of responsibility. Pre-*Booker*, a district court could depart from a guideline range for extraordinary acceptance of responsibility, for example, if the defendant, against his penal interest, provided significant, useful information to the government. See *United States v. Nguyen*, 212 F. Supp. 2d 1008, 1031 (N.D. Iowa 2002) (defendant helped exonerate an innocent co-defendant); *United States v. Rothberg*, 222 F. Supp. 2d 1009, 1016-19 (N.D. Ill. 2002) (defendant significantly cooperated even though there was initially no offer of a § 5K1.1). On the other hand, if the defendant initially denies specific conduct and the district court determines that it occurred as testified to, the defendant cannot claim that he took responsibility for his actions. See *United States v. Mancillas*, 183 F.3d 682, 711 (7th Cir. 1999).

By August 2007, Pulley admitted his role in the Affinity scheme. Although the Affinity scheme was not included as relevant conduct in the presentence investi-

gation report, the government was aware of the scheme (it was listed in the government's Version of Events, filed in late July 2007) and aware that the scheme involved several phony accounts opened under names Pulley had used in previous schemes. At sentencing, the district court declined to find that Pulley had extraordinarily accepted responsibility and noted that Pulley had a long criminal history involving fraud and, based on the evidence it received, concluded that Pulley had not "learned his lesson. "The district court provided a sufficient explanation of its decision to reject the defendant's arguments regarding his extraordinary acceptance of responsibility and likewise did not abuse its discretion in deciding that his conduct did not rise to the level of extraordinary acceptance.

In addition, Pulley contends that the similarities between him and Anderson suggest that Pulley's sentence should have been closer to Anderson's 38 months. While Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants, see, e.g., *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009); *United States v. Bartlett*, 567 F.3d 901, 908, 909 (7th Cir. 2009), warranted disparities are allowed. Moreover, a district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities. See *Bartlett*, 567 F.3d at 908 (citing *Gall v. United States*, 552 U.S. 38, 54 (2007)). The two defendants began cooperating at different times and, while the court determined that Anderson had changed his lifestyle after his illness, it concluded that Pulley had not similarly benefitted

from his previous incarcerations. The district court adequately considered Pulley's arguments regarding unwarranted sentencing disparities and did not abuse its discretion in rejecting them as bases for a lower sentence. See *Statham*, 581 F.3d at 556 (holding that a co-defendant differed from the defendant for sentencing purposes because the co-defendant cooperated, pleaded and had a less extensive criminal history).

As noted above, if the district court provides an adequate statement of reasons, consistent with § 3553(a), for believing that the sentence is appropriate, and it is within the Guidelines range, we presume the sentence is substantively reasonable. See *Rita*, 551 U.S. at 347; *United States v. Turner*, 569 F.3d 637, 640 (7th Cir. 2009).[4]

---

[4] Although neither party raised this point, we note that the Statement of Reasons provides an incorrect lower bound to the sentencing range and should be amended to accurately reflect the range that was discussed during sentencing once the district court made its determination as to the disputed facts. Although we rarely exercise our powers to correct clerical errors, see *United States v. Bonner*, 522 F.3d 804, 808-09 (7th Cir. 2008), we have done so in the past, see *United States v. Boyd*, 208 F.3d 638, 649 (7th Cir. 2000), *vacated on other grounds*, 531 U.S. 1135 (2001), and we see no need to go through the exercise of remanding to allow the district court to direct its clerk to correct the sentencing range. We therefore direct the clerk to amend the Statement of Reasons to adequately reflect that the applicable range was 70 to 87 months. See Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in . . . the United States courts of appeals"), 1(b)(2)-

(continued...)

Given the district court's careful consideration of Pulley's arguments and its articulation of a sentence based on the § 3553(a) factors, we have no reason to conclude that it abused its discretion by rejecting several of Pulley's arguments and sentencing him to the high end of the applicable guideline range. The district court is therefore

AFFIRMED.

---

[4] (...continued)
(3) ("court" is defined to include a federal appeals court judge), 36 ("After giving notice it considers appropriate, the court may at any time correct a clerical error in judgment, order, or other part of the record. . .").

---