NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 20, 2013
Decided December 6, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-2471

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-CR-298 |
| JAMES E. JOHNSON, *Defendant-Appellant*. | Lynn Adelman, *Judge*. |

**O R D E R**

James Johnson was convicted of conspiring to distribute heroin, and the district court applied a two-level upward adjustment for gun possession when calculating the guidelines range. Johnson argues on appeal that the district court clearly erred by finding both that he possessed a gun in connection with his offense and that his coconspirators' gun possession was reasonably foreseeable to him. We affirm Johnson's sentence.

Johnson pleaded guilty to conspiring with two other men, whom the parties have designated K.R. and D.B., to distribute heroin in Milwaukee. *See* 21 U.S.C. §§ 846,

841(a)(1), (b)(1)(C). The police found more than 50 grams of heroin, a loaded gun, and cash at a house on Port Washington Street used by Johnson's coconspirators, who fingered Johnson as their heroin supplier. The year before, police also had found about 10 grams of heroin and a gun during a search of D.B.'s residence, and Johnson's fingerprints were found on various items in that house. The police eventually executed a search warrant at Johnson's home, finding in a dresser drawer a gun with his thumb print on it. Simultaneously they executed a search warrant at a stash house Johnson used, finding cash, drug-related equipment, and just over 5 grams of heroin.

At sentencing the government urged the district court to apply a two-level upward adjustment for gun possession. *See* U.S.S.G. § 2D1.1(b)(1). Johnson or his coconspirators possessed multiple guns during the time period of the conspiracy, including the loaded gun found at the Port Washington Street house, the gun found in Johnson's dresser, the gun found in D.B.'s residence, a gun found by police in Oklahoma when they stopped and searched a rental car in which Johnson was riding, and an assault rifle that D.B.'s young cousin had found in a stash house on 44th Street and accidentally fired into the duplex below. The probation officer recommended applying the upward adjustment based on three of these guns: the gun found in Johnson's dresser, the gun found in Oklahoma, and the assault rifle. Johnson objected that the first two guns had no connection to the conspiracy and that statements from his coconspirators connecting him to the assault rifle were contradictory and fabricated. The government argued during the sentencing hearing that the assault rifle alone was enough to support the upward adjustment.

The district court agreed with the government and applied the upward adjustment. The court concluded that the statements from Johnson's coconpsirators were reliable, and noted that Johnson had not submitted any evidence suggesting that those statements were fabricated. The court calculated an imprisonment range of 63 to 78 months but accepted the parties' joint (but nonbinding) recommendation and sentenced Johnson to 48 months, to be followed by 3 years of supervised release.

As an initial matter, the parties agree that Johnson has raised a justiciable issue on appeal even though he "accepts" that the upward adjustment did not affect the sentence imposed by the district court. The parties are correct because district courts must calculate the guidelines range correctly before imposing a sentence, *see Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009), and Johnson argues that the district court's calculation is wrong.

The more interesting question, though, is whether the claimed error is harmless. Johnson says he accepts that he would have received the same sentence but contends that the upward adjustment might affect his eligibility for the Bureau of Prison's Residential Drug Abuse Program. He cites no specific authority (and we have found none) supporting the assertion that an upward adjustment for gun possession could block his participation in the drug-abuse program, but the government appears to be correct that the adjustment does scuttle Johnson's chance for early release under 28 C.F.R. § 550.55. That regulation permits inmates to be released up to 12 months early if they successfully complete the drug-abuse program but excludes inmates convicted of conspiracy when the offense involved gun possession. *See* 28 C.F.R. § 550.55(a), (b)(5)(ii), (b)(6). To determine whether an offense involves gun possession, the BOP looks to the district court's findings and the presentence report, *see* U.S. DEP'T OF JUSTICE, FED. BUREAU OF PRISONS, PROGRAM STATEMENT NO. P5162.05, at 10–13 (2009), and the BOP's decisions regarding early release are not subject to judicial review, *see* 18 U.S.C. § 3625; *Eaton v. U.S.*, 178 F.3d 902 (7th Cir. 1999). Because the upward adjustment may block Johnson from obtaining early release, an error in applying the upward adjustment would not be harmless. *Cf. United States v. Pless*, 982 F.2d 1118, 1128 (7th Cir. 1992) (explaining that presentence reports should be accurate so that prison and parole authorities have clear record).

On the merits, Johnson contends that the government failed to establish that he possessed the assault rifle in connection with the conspiracy because, he says, the evidence linking him to the rifle is unreliable. K.R. had told the police that Johnson supplied the assault rifle for the stash house on 44th Street. But D.B. had said, according to the parties' reading of the presentence report, that he bought the rifle for protection, though Johnson knew about the gun and handled it. Johnson did not embrace either statement as accurate, and neither did he submit evidence to establish that K.R. had lied. Instead he insisted that his two coconspirators had given conflicting stories about the rifle's source and that, without additional evidence establishing the accuracy of the presentence report, the district court could not find that he possessed the assault rifle.

Johnson's argument lacks merit. First of all, it rests on the premise, accepted by the parties and the district court, that D.B. said that he bought the assault rifle. But this premise rests on a misreading of the presentence report. What that report actually says is that D.B. told the police that he bought the gun found at the Port Washington Street house. Thus, the coconspirators' statements linking Johnson to a gun refer to different guns—K.R.'s to the assault rifle accidentally fired in the duplex and D.B.'s to the gun

found at the Port Washington house. There is no conflict, and this knocks out the whole premise of Johnson's appeal.

But even if the parties have correctly interpreted the presentence report, the district court did not clearly err by finding that Johnson possessed the assault rifle. The upward adjustment is required if Johnson actually possessed the gun himself or, alternatively, if his coconspirators' possession furthered jointly undertaken activity and was reasonably foreseeable to him. *See United States v. Block*, 705 F.3d 755, 763 (7th Cir. 2013); *United States v. Luster*, 480 F.3d 551, 557–58 (7th Cir. 2007). And because the district court relied on the presentence report, Johnson had the burden to create "real doubt" about its facts. *See United States v. Meherg*, 714 F.3d 457, 459 (7th Cir. 2013); *United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir. 1994). No matter the source of the assault rifle, there is no dispute that K.R. and D.B. possessed it at a stash house, and they both said that Johnson knew about it. Johnson presented nothing to rebut this evidence about his actual knowledge, much less to suggest that their possession was not reasonably foreseeable to him.

AFFIRMED.