In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2676

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JULIUS STATHAM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 92—**Virginia M. Kendall**, *Judge.*

ARGUED MAY 6, 2009—DECIDED SEPTEMBER 10, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Julius Statham and eight others
were caught running guns from Mississippi to Chicago.
Statham pleaded guilty to his part in the conspiracy
and was sentenced to 60 months in prison. He now ap-
peals, arguing that the district court clearly erred when
it calculated his sentence under the U.S. Sentencing
Guidelines and abused its discretion by imposing an

unreasonable sentence. He takes issue with the district court's findings that his offense involved more than 24 weapons, that some of the weapons' serial numbers were obliterated, and that his prior offenses warranted his placement in the Guidelines' highest criminal history category. In addition, he contends that the court should not have given him a prison term longer than the terms given to his co-defendants, nor, in his view, was the court justified in deciding that his sentence should run consecutively to an undischarged term of imprisonment that he had received for a different crime.

Many of Statham's arguments would be better suited for a sentencing hearing before a district court. Federal criminal sentencing relies on factual determinations and discretionary decisions made by district judges. Our role is to review those determinations to ensure that the district court applied the correct legal standards, did not clearly err in its factual determinations, and chose a reasonable sentence. Because Statham has not identified reversible error under any of those standards, we affirm.

## I

Statham and two of his cousins, Roy Christopher Brunt ("Christopher") and Arness Brunt ("Arness"), took part in a scheme to buy guns in Mississippi and transport them for sale on the streets of Chicago. Christopher and Arness obtained the weapons in Mississippi, where they lived, and then drove them to Chicago, selling them to Statham and others. Because Christopher was a convicted felon, he could not legally purchase firearms

himself, and so he recruited others to help. One recruit was his stepbrother, Sylvester Rice. Like the others, Rice bought weapons for Christopher in Mississippi and accompanied Christopher to Chicago from time to time. The scheme lasted from 1999 until 2005, when nine people—including Statham, Christopher, Arness, and Rice—were indicted for conspiring to distribute guns illegally, in violation of 18 U.S.C. § 371. On March 5, 2008, without reaching an agreement with the government, Statham pleaded guilty. Two months later, he was sentenced to the statutory maximum of 60 months' imprisonment.

At Statham's sentencing hearing, the government and Statham disagreed about how many guns were involved in his crime. Statham admitted in a plea declaration that he had asked his relatives to bring firearms to Chicago; in that document, he estimated that somewhere between three and seven firearms had been involved. By the time the sentencing hearing began, Statham was willing to admit that he actually had purchased somewhere in the neighborhood of eight to 24 guns. The government thought that this was still too low and presented testimony from two cooperating witnesses—Christopher and Rice—in support of its position.

Rice testified that he traveled to Chicago with Christopher three or four times, bringing two guns for sale on each occasion. Fearing the weapons might be traced back to him, he scratched the serial numbers off all of the guns that he bought. (Christopher corroborated Rice's testimony about removing serial numbers and

added that this was a common practice among all of the people he recruited.) Rice also testified that Christopher brought additional guns to sell on these trips, though he did not know how many. Rice said that on the first trip, he and Christopher checked into a hotel, where Statham came to meet them. Christopher gave Statham a bag, which Rice assumed included the two weapons that Rice had brought along. On his second trip to Chicago, Rice recounted, a similar transaction took place. This time, however, it was at the home of Christopher's sister; Rice remained indoors while Christopher and Statham traded guns for money outside of the house.

Christopher's testimony contradicted Rice's on a number of points. Christopher described the deal at the hotel differently, recalling that the exchange with Statham occurred out of Rice's view and earshot. Perhaps more importantly, Christopher testified that Rice accompanied him to Chicago only once, and that he provided only one gun on that trip. Christopher also testified that he took approximately 20 trips to Chicago in all, selling Statham 25 firearms of his own as well as 10 that he had transported on behalf of others. (There were other conflicts in the testimony that did not concern the number of weapons involved, except insofar as they bore on credibility generally.)

After hearing this testimony and argument from both sides, the district court adopted all of the recommendations in the Presentence Investigation Report ("PSR"). Using the 2004 Guidelines Manual (because a different judge had sentenced Statham's co-defendants under that

version—technically it should have used the manual in force at the time of sentencing, see U.S.S.G. § 1B1.11(a), but Statham said nothing about this on appeal, and so neither do we), the district court calculated a Guidelines range of 63 to 78 months. Statham's base offense level was 14. The district court added six levels to that based on its finding that Statham's offense involved more than 24 firearms, and another two levels because at least one of those guns had an obliterated serial number, for a total of 22 points. It then subtracted three levels for acceptance of responsibility, which yielded a final offense level of 19. Statham fell in criminal history category VI.

The district court took a conservative approach in calculating the number of weapons Statham moved. It found that Christopher and Rice were credible and that their testimony was not wholly divergent. Based on their information, the court decided that Christopher had sold 20 guns to Statham while Rice had provided two. In addition, the court took into account Arness's plea agreement, in which Arness admitted selling Statham somewhere between 12 and 15 guns. Finding this admission credible as well, the court concluded that Arness had provided Statham at least an additional seven weapons, resulting in a total of 29. (It is worth noting just how conservative this estimate was: if the district court had relied on the maximum number of guns that each of the sources admitted selling Statham, it easily might have found that the offense involved between 50 and 60 weapons.)

To calculate Statham's criminal history category, the district court started with 15 criminal history points

tallied from Statham's seven prior convictions and added three points because Statham committed his offense while on parole and within two years of release from prison. The total of 18 criminal history points placed Statham easily in criminal history category VI. In the end, the court chose a sentence of 60 months, which is the statutory maximum under 18 U.S.C. § 371 and just below Statham's minimum Guidelines sentence. The district court ordered the sentence to run consecutively to an undischarged term of imprisonment that had been imposed by a different judge two months earlier, after Statham pleaded guilty to charges related to a drug trafficking conspiracy.

## II

### A

Statham argues that the district court committed clear error in calculating his Guidelines range. He advances three theories in support of this argument. First, he asserts that the district court erred when it found that his offense involved 29 firearms, which caused it to increase his offense level by six under U.S.S.G. § 2K2.1(b)(1) (calling for such an increase if an offense involves between 25 and 99 weapons). Second, he contends that the district court erred by adding two offense levels under U.S.S.G. § 2K2.1(b)(4) because the guns had obliterated serial numbers. Finally, he challenges his placement in criminal history category VI. We consider these points in turn.

Statham admitted that he bought between eight and 24 guns, and so, for the § 2K2.1(b)(1) increase to apply, the court needed to find that only one more gun was involved. Statham argues that the court should not have relied on the testimony of Christopher and Rice, as well as Arness's plea agreement, to find that last gun. In support of that point, Statham urges that the divergence between Christopher's and Rice's testimony reveals that the information they provided lacked sufficient indicia of reliability and so the district court's reliance on that information was clear error. Insofar as he acknowledges that the formal rules of evidence applied in criminal trials do not govern sentencing, he is correct. See *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995). As he also may be conceding, we require only that the information considered has sufficient indicia of reliability to support its probable accuracy. See *id.*, U.S.S.G. § 6A1.3(a). In addition, the defendant must have—and Statham did have—an opportunity to rebut any evidence that is presented. See *United States v. Omole*, 523 F.3d 691, 701-02 (7th Cir. 2008).

After hearing testimony (including cross-examination) and argument about the reliability of that testimony, the district court found that the accounts of the witnesses were not "drastically divergent," that what "one might read as lack of credibility" on Rice's part was simply "lack of intelligence in understanding the question," and that "the testimony of Mr. Rice is credible [and] the testimony of Mr. Roy Christopher Brunt was credible as far as his description of how many firearms he's brought." The district court's credibility determination was not clearly erroneous.

Statham's attack on the court's use of Arness's plea agreement runs into problems as well. Statham argues that the statements in Arness's plea agreement could not be relied upon because they were not subject to cross-examination and the plea agreement itself lacked sufficient indicia of reliability. Hearsay, however, is admissible at sentencing and no constitutional provision is offended when statements used to make sentencing determinations are not subjected to cross-examination. See *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005). In addition, a plea agreement need not be corroborated by testimony or other evidence to be reliable; some plea agreements may possess sufficient indicia of reliability in and of themselves. *Cf. United States v. Mendoza*, No. 08-2403, slip op. at 12 (7th Cir. Aug. 12, 2009) ("We do not require that the testimony of a biased witness be corroborated by other evidence to justify the district court's reliance on such testimony."). In this case, nothing about Arness's plea agreement gives us reason to doubt the district court's judgment that it was reliable. In addition, Statham's admission in his own plea declaration that he "asked his cousin Arness Brunt . . . to purchase firearms on his behalf" surely would suffice. There is no reason to upset the credibility determinations of the district court; the information on which it depended was reliable; and it did not commit clear error when it applied a six-level increase to Statham's offense level.

Statham's second argument attacks the district court's enhancement based on the obliterated serial numbers. Section 2K2.1(b)(4) of the Guidelines directs a district court to impose a two-level increase if a gun involved

in the offense "had an altered or obliterated serial number." Statham need not have known that serial numbers had been removed from the weapons. See *United States v. Schnell*, 982 F.2d 216, 217 (7th Cir. 1992) (holding that the absence of a scienter element in § 2K2.1(b)(4) does not violate substantive due process). Instead, the court needed to find only that one of the guns involved in Statham's crime was in fact missing a serial number. Both Rice and Christopher admitted that much. The court decided that, "based upon [its] finding of credibility on the part of Mr. Rice . . . . Statham knew or reasonably should have known that those weapons had obliterated serial numbers." The district court's finding that Statham actually knew about the obliterated serial numbers may have been unnecessary, but there is no evidence in the record to undermine its credibility finding, its resulting factual finding, or the ultimate offense level increase that it imposed.

Statham's final argument addresses the district court's decision to put him in criminal history category VI. He offers two reasons why this was error. First, he presents a curious argument that seems to confuse the case now before us with another case of his pending in this court. Statham says that it was error for the district court to add "two [criminal history] points for allegedly committing an offense within two years of release from custody on parole." The problem, he continues, is that "[h]e was charged with the sale of cocaine on January 31, 2005 . . . . two years and two days after release from custody on parole." Whether this argument is ultimately persuasive in *United States v. Are*, No. 07-3246 (7th Cir. argued Apr. 1,

2009), in which Statham challenges the sentence he received after pleading guilty to his unrelated drug offense, it makes no sense here. In the case before us, the district court added three—not two—criminal history points in its calculation of Statham's criminal history category: two because Statham committed the crime while on parole, U.S.S.G. § 4A1.1(d), and one more because the offense took place less than two years after Statham got out of prison, § 4A1.1(e). Statham presents no reason for us to conclude that these enhancements were wrong.

Statham's more comprehensible argument is that it was error for the district court to treat three of his seven prior convictions as separate offenses when it calculated his criminal history category. Under § 4A1.1 of the Guidelines, criminal history points are assigned for each prior sentence that a defendant has received. Thus, a defendant may benefit if nominally distinct prior cases are treated as a single conviction when criminal history is calculated. Prior to Amendment 709 of the Guidelines, which took effect on November 1, 2007, such "functional consolidation" of cases could occur if a defendant showed that the court that imposed sentences in the past "considered the cases sufficiently related for consolidation and effectively entered one sentence for multiple convictions." *United States v. Vallejo*, 373 F.3d 855, 858 (7th Cir. 2004). (Section 4A1.2(a)(2) now provides that multiple sentences should be regarded as one if they were imposed on the same day, unless there was an intervening arrest.) The district court's determination whether the defendant established functional consoli-

dation "is a matter of fact, to be reviewed deferentially by the court of appeals." *United States v. Buford*, 201 F.3d 937, 942 (7th Cir. 2000), *aff'd*, 532 U.S. 59 (2001).

On August 6, 1996 (actually August 6 and August 7, but both parties treat the sentencing as if it had occurred on one day), Statham was sentenced for three crimes: a February 1989 burglary (upon the revocation of his initial sentence of probation), theft and unlawful use of a firearm by a felon in December 1995, and possession of a controlled substance in February 1996. Statham argues that the district court should have regarded these cases as functionally consolidated because they were sentenced on the "same" day and "the apparent intent of the state judge was that a concurrent sentence was appropriate punishment for all three convictions." The record does not support his argument. The apparent intent of the state judge was that two of Statham's sentences were to run concurrently, while the sentence for possession of a controlled substance was to run consecutively to those other two. Even if this were not the case, the district court found that functional consolidation was inappropriate because each offense was separated by an intervening arrest and the events and victims involved in the three cases were completely different.

In the past, this court has relied on Application Note 3 to § 4A1.2 when evaluating the relatedness of prior sentences. Relying on that Note, *United States v. Best*, held that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest." 250 F.3d 1084, 1094 (7th Cir. 2001). While the

Sentencing Commission revised Application Note 3 in Amendment 709, the logic of *Best* remains compelling. The district court followed that logic, and its finding that intervening arrests preclude consolidation of cases was correct. Statham's three crimes were entirely unrelated, and he thus cannot meet his burden of showing functional consolidation just because the sentences were imposed at approximately the same time.

B

Our last task is straightforward: given our conclusion that the district court correctly calculated the Guidelines range, we review the resulting sentence for reasonableness. *Rita v. United States*, 551 U.S. 338, 341 (2007); *United States v. McKinney*, 543 F.3d 911, 913 (7th Cir. 2008). Statham presents two arguments that the district court abused its discretion and imposed an unreasonable sentence. Neither one is persuasive.

Statham first argues that the district court abused its discretion by ordering that his 60-month sentence run consecutively to a 125-month sentence that was imposed by a different judge in Statham's unrelated drug conspiracy case (the one we noted earlier). He says that the resulting combined term of imprisonment is unreasonably harsh. The question for us is whether the district court abused its discretion. *United States v. Bangsengthong*, 550 F.3d 681, 682 (7th Cir. 2008) (noting that, after *United States v. Booker*, 543 U.S. 220 (2005), "a debate about how much discretion the Guidelines themselves confer has the air of the scholastic"). At sentencing, the district court

discussed Statham's other case and explained why it was choosing to impose a consecutive sentence:

> That case involved the distribution of drugs, and it had nothing to do with the sale of firearms to the people here in the streets of Chicago. Those are completely separate offenses. . . . They take place at different times. They involve different goals of a conspiracy, and they involve different defendants, different coconspirators. . . . [B]ased upon the fact that over the course of the years, you have violated probations and supervised release, I don't see any reason why you should get a benefit to having this sentence run concurrently. . . . I do find it persuasive that there would be no sentence for this gun trafficking if I were to have it run concurrently.

While Statham is correct that the Guidelines seek to avoid "the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence," *Witte v. United States*, 515 U.S. 389, 405 (1995) (discussing U.S.S.G. § 5G1.3), there is nothing fortuitous about the separation of his two prosecutions. They are entirely unrelated, as the district court observed, and so the court acted well within its discretion when it decided that Statham's sentence should run consecutively. See 18 U.S.C. § 3584; U.S.S.G. § 5G1.3(c).

Finally, Statham contends that the disparity between his sentence and those of his co-defendants makes his sentence unreasonable. He stresses that 18 U.S.C. § 3553(a)(6) requires a sentencing court to "avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct." Nothing in that provision, however, suggests that the district court abused its discretion or imposed an unreasonable sentence when it imposed a term of imprisonment different from that received by Statham's co-defendants.

In coming to that conclusion, we are not relying on any presumption that a sentencing disparity is problematic only if it is between the defendant's sentence and the sentences imposed on other similarly situated defendants nationwide. See generally *United States v. Woods*, 556 F.3d 616, 623 (7th Cir. 2009); *Omole*, 523 F.3d at 700-01. Such a categorical rule is now foreclosed by *Gall v. United States*, which endorsed a district court's consideration of the need to "avoid unwarranted disparities, but also unwarranted similarities among other co-conspirators" when calculating a reasonable sentence. 128 S. Ct. 586, 599-600 (2007). But even after *Gall*, § 3553(a)(6) does not require that defendants in a single case be sentenced to identical prison terms. To the contrary, that provision seeks only to avoid "unwarranted" sentencing disparities. *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). If a district court has correctly calculated a Guidelines range, we assume that significant consideration has been given to avoiding unwarranted disparities between sentences. *Gall*, 128 S. Ct. at 599; *Bartlett*, 567 F.3d at 908. And logically it is more likely that an *unwarranted* discrepancy might be present if the court has chosen sentences outside the Guidelines range. We are therefore open in all cases to an argument that a defendant's sentence is unreasonable because of a disparity

with the sentence of a co-defendant, but such an argument will have more force when a judge departs from a correctly calculated Guidelines range to impose the sentence. Statham's case does not fit that bill.

In Statham's case, the different members of the conspiracy were not similarly situated; there is thus nothing unreasonable about the fact that the sentences they received were also different. Statham's co-defendants entered plea agreements with the government, cooperated in the investigation, and had less-extensive criminal histories. The district court was entitled to take these facts into account when it chose each person's sentence. We conclude that Statham's below-Guidelines, statutory maximum sentence, was a reasonable one, in light of all the relevant circumstances.

* * *

The district court's judgment is AFFIRMED.