[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12346
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cr-00269-SDM-TBM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS FERNANDO MANCILLAS MEDINA,
a.k.a. Perico,
a.k.a. Nino,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 20, 2016)

Before WILLIAM PRYOR, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Luis Mancillas Medina appeals his 210-month sentence, imposed after pleading guilty to one count of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and one count of laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957.  On appeal, Medina argues that the district court erred in applying a dangerous weapons enhancement based on the possession of firearms by Medina's co-conspirators.  Medina also contends that the district court erred in deciding he was not entitled to a minor role reduction.  Lastly, Medina argues that his sentence is substantively unreasonable, as he is similarly situated to another member of the conspiracy who received a lesser sentence.  Upon review of the record and the parties' briefs, we affirm.

## I.  BACKGROUND

A grand jury charged Medina with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and one count of laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity.  He pled guilty to both counts.

Medina and several other co-conspirators were part of a large-scale drug trafficking and money laundering organization that transported and distributed hundreds of kilograms of narcotics—including cocaine, methamphetamine, and marijuana—throughout the United States.  One of Medina's co-defendants, Hugo Ramirez, was a leader of the organization.  The criminal enterprise used several means to transport drugs and drug proceeds, including shipping drugs via parcel service, concealing drugs in cars, and sending couriers cross-country to retrieve drug proceeds.

Medina joined the organization in 2001 and worked closely with Ramirez. Medina delivered hundreds of kilograms of cocaine, methamphetamine, and marijuana and also received, counted, concealed, and transported millions of dollars in drug proceeds for Ramirez.  As one of the leaders of the criminal conspiracy, Ramirez was responsible for transporting 400 to 500 kilograms of cocaine and thousands of pounds of marijuana throughout the United States. Medina worked directly for Ramirez and assisted him in almost every transaction.

Another of Medina's co-defendants, Maria Hernandez, performed a similar role within the conspiracy, albeit on a much smaller scale.  Hernandez was brought into the conspiracy by family members and acted as a courier with little or no understanding of the scope of the broader drug trafficking conspiracy.   She was

3

responsible for transporting drug proceeds on at least three occasions and was accountable for at least $200,000 in transported drug proceeds.

Law enforcement officials eventually succeeded in infiltrating and dismantling the criminal enterprise. In addition to arresting Medina and seizing a large quantity of narcotics and drug proceeds, officials also seized multiple firearms while arresting Medina's co-conspirators. These included two handguns in a backpack that also contained several grams of methamphetamine and marijuana, a rifle and several handguns recovered from a hotel room where officials also seized several kilograms of cocaine, a handgun located in a car containing over two kilograms of methamphetamine, and a rifle surrendered to law enforcement by a confidential witness.

After Medina pled guilty, a probation officer prepared a presentence investigation report ("PSI") that calculated a Sentencing Guidelines range of 168 to 210 months' imprisonment. The calculation included a dangerous weapons enhancement to Medina's base offense level because several of his co-conspirators possessed and transported firearms in conjunction with the drug trafficking operation.

At his sentencing hearing, Medina objected to the calculation of his guidelines range, arguing that the dangerous weapons enhancement was inappropriate because there was no evidence that he possessed or was involved in

4

the transportation of firearms and that he had no reason to foresee that the firearms were part of the drug trafficking and money laundering conspiracy.  He also requested a minor role designation, arguing that, because he acted only as a courier, his role was distinguishable from those of his co-conspirators.  The district court denied Medina's objection to the application of the dangerous weapons enhancement and his request for a minor role designation.  After hearing arguments from both parties, the court sentenced Medina to 210 months' imprisonment for each count, sentences at the top of the guidelines range, to be served concurrently.  Medina raised no objection to his sentence before the district court.  This is his appeal.

## II.  DISCUSSION

### A.    Dangerous Weapons Enhancement

On appeal, Medina contends that the district court erred in applying a two-level dangerous weapons enhancement when calculating his guidelines range.  We review a district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error.  *United States v. Smith*, 480 F.3d 1277, 1278 (11th Cir. 2007).

"The federal Sentencing Guidelines provide that, if a dangerous weapon (including a firearm) was possessed during a drug-trafficking offense, then a defendant's offense level should be increased by two levels, unless it is clearly

5

improbable that the weapon was connected to the offense." *Id.*; U.S.S.G. § 2D1.1(b)(1).  A court may apply this enhancement even if the defendant was not himself in possession of a weapon as long as his co-conspirators were.  *See United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006).  For the enhancement to apply in those circumstances, the government must establish by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Id.* (internal quotation marks omitted).  Once the government demonstrates that a firearm was present, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." *Id.* (internal quotation marks omitted).  For sentencing purposes, whether a firearm was possessed is a factual finding, which we review for clear error.  *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

Regarding the reasonable foreseeability of a firearm's possession, "we have noted that numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic." *Id.* at 1246 (internal quotation marks omitted).  Notably, however, "the mere fact that a drug offender possesses a firearm does not

necessarily give rise to the firearms enhancement." *Stallings,* 463 F.3d at 1221.

"The government must show some nexus beyond mere possession between the

firearms and the drug crime." *Id.*  In other words, the government must

demonstrate that a firearm had "some purpose or effect with respect to the drug

trafficking crime; its presence or involvement cannot be the result of accident or

coincidence." *Id.* at 1220 (internal quotation marks omitted).

The district court did not clearly err in applying the firearms enhancement to

Medina.  Possession of firearms by Medina's co-conspirators was reasonably

foreseeable and in furtherance of the conspiracy.  While Medina was not

personally found with a firearm, law enforcement officials seized multiple firearms

while apprehending his co-conspirators.[1]  These firearms were found in close

proximity to narcotics, suggesting that their possession was in furtherance of the

---

[1] It is not entirely clear from the record whether and which of these weapons were loaded when law enforcement officers seized them.  Medina contends that the government's failure to demonstrate that the guns were loaded makes the enhancement improper because it casts doubt on whether possession of the firearms was in furtherance of the conspiracy.  But even assuming the guns were not loaded, we see no clear error in concluding that possession of those guns by Medina's co-conspirators was in furtherance of the conspiracy and reasonably foreseeable by him.  *See Pham*, 463 F.3d at 1241 (affirming district court's application of dangerous weapons enhancement after police seized unloaded gun at co-conspirator's residence).  Moreover, at the sentencing hearing, counsel for the government stated that he had found a report confirming that at least one of the guns seized was loaded.  Although it is not clear to what report counsel was referring, Medina's attorney acknowledged seeing the report and stated he did not "have any reason to disbelieve the contents of that report."  Sentencing Hr'g Tr. at 24 (Doc. 90) ("Doc." refers to the docket entry in the district court record in this case.)  On appeal, Medina argues that this report is hearsay, but we have repeatedly concluded that "reliable hearsay can be considered during sentencing."  *United States v. Zlatogur,* 271 F.3d 1025, 1031 (11th Cir. 2001).  And Medina's counsel acknowledged that he had no reason to think the report unreliable.  Indeed, speaking more broadly, Medina provides no reason to believe that this gun, or any other seized by law enforcement officials, was not loaded.

overall trafficking conspiracy.  *See United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (evidence that firearms were present at locations where drugs were sold supported the conclusion that possession of the firearms was in furtherance of the drug conspiracy).  Moreover, given that the conspiracy itself involved trafficking large amounts of valuable narcotics and proceeds from drug sales, it is reasonably foreseeable that Medina's co-conspirators "felt the need to protect their inventory and proceeds."  *Id.*; *see also Pham*, 463 F.3d at 1246 ("[W]e have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs.").  "In light of the vastness of the conspiracy and the large amount of drugs and money being exchanged in this case, the district court did not clearly err by finding that it was reasonably foreseeable that a firearm would be possessed by a co-conspirator." *Pham*, 463 F.3d at 1246.

Medina also argues that the district court's application of the enhancement was inappropriate because he did not plead guilty to any firearms offense.  But this argument "misperceives the distinction between a sentence and a sentence enhancement."  *United States v. Martinez*, 924 F.2d 209, 211 (11th Cir. 1991) (internal quotation marks omitted).  In deciding whether to apply a sentencing enhancement, a district court is permitted "to consider relevant conduct for which the defendant was neither charged nor convicted, so long as proof of that conduct

8

is supported by reasonable indicia of reliability." *Id.* And Medina never argues that the evidence on which the district court relied when sentencing him was unreliable. In sum, we see no clear error in the district court's application of a dangerous-weapons enhancement to the calculation of Medina's guidelines range.

## B.    Minor Role Designation

Medina contends that the district court should have granted him a minor role designation when calculating his guidelines range. A district court's determination that the defendant is not entitled to a reduction for a minor role in the offense is a finding of fact, reviewed only for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden of establishing his qualification for a minor role reduction by a preponderance of the evidence. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006).

A defendant may receive a two-level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The determination of whether to apply a mitigating role adjustment "is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2, comment. (n.3). The two-level minor role adjustment "applies to a defendant . . . who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n.5).

9

In determining whether to grant a minor role reduction, "(1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense." *Alvarez-Coria*, 447 F.3d at 1343. "[A] defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320-21 (11th Cir. 2010) (internal quotation marks omitted).

The district court did not clearly err in denying Medina a minor role reduction. Medina contends that a minor role designation is appropriate because he operated exclusively as a courier and was uninvolved in the broader aspects of the trafficking conspiracy. But our precedent is clear that "courier status in and of itself is not dispositive of whether a defendant is entitled to . . . a downward adjustment for role in the offense." *De Varon*, 175 F.3d at 942. And indeed, when looking beyond his title as a "courier" it becomes clear that Medina played more than a minor role in the trafficking enterprise. He worked directly for and extensively with Ramirez, one of the leaders of the conspiracy—a fact that supports the district court's denial of his request for a minor role designation. *See id.* (a defendant's "status and assigned tasks" are factors properly considered in deciding whether to grant a minor role reduction). The district court found that

Medina "tucked right in underneath [Ramirez] in the hierarchy." Sentencing Hr'g Tr. at 28 (Doc. 90).[2] We cannot say this finding of fact was clearly erroneous, especially since Medina has presented no reason for us to question it. In addition to his status within the conspiracy, Medina transported hundreds of kilograms of narcotics and millions of dollars in drug proceeds for the trafficking organization, which further supports the district court's denial of a minor role designation. *See De Varon*, 175 F.3d at 943 ("[T]he amount of drugs in a courier's possession . . . may be the best indication of the magnitude of the courier's participation in the criminal enterprise . . . .").

Nor does Medina ever demonstrate that he played a minor role in relation to his co-conspirators. He asserts that his role was comparable to that of Hernandez, who received a minimal role designation. But Hernandez acted as a courier on far fewer occasions than Medina and had little understanding of the scope of the broader drug trafficking conspiracy. And beyond identifying Hernandez as having performed a comparable role, Medina does nothing to show that he is "less culpable than most other participants" in the conspiracy. U.S.S.G. § 3B1.2, comment. (n.5). We thus agree with the district court that the facts show Medina's base offense level was properly calculated based on the conduct attributable to him and that he is not entitled to a minor role reduction.

---

[2] "Doc." refers to the docket entry in the district court record in this case.

11

## C.    Reasonableness of Medina's Sentence

Medina's final contention is that his sentence is substantively unreasonable. We review the reasonableness of a sentence under a deferential abuse of discretion standard.[3]  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "[I]t is only the rare sentence that will be substantively unreasonable."  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted).  Where, as here, a sentence is within the guidelines range, we ordinarily expect it to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  That a sentence is below the statutory maximum is a factor favoring its reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  The party challenging the sentence bears the burden of establishing that the sentence is unreasonable.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

In reviewing the reasonableness of a sentence, we first ensure that the district court committed no significant procedural error, and then we examine whether the sentence was substantively unreasonable based on the totality of the circumstances.  *Gall*, 552 U.S. at 51.  As Medina does not contend that the district

---

[3] The government contends that Medina's challenge to the substantive reasonableness of his sentence is subject to plain error review because he did not raise an objection to the reasonableness of his sentence before the district court.  But to our knowledge, we have yet to decide in a published opinion whether we review the substantive reasonableness of a defendant's sentence for plain error if the defendant failed to raise any objection before the district court. Regardless, we need not decide whether plain error review would apply in this case because, as explained below, Medina's sentence is reasonable under the abuse of discretion standard.

12

court committed a procedural error, we need only consider whether his sentence was substantively unreasonable.

Under 18 U.S.C. § 3553(a), the district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2), including promoting respect for the law, deterring criminal conduct, and protecting the public from the defendant's future criminal conduct.  *See* 18 U.S.C. § 3553(a)(2).  The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  *Id.* § 3553(a)(1), (3)-(7).

A district court abuses its discretion and imposes a substantively unreasonable sentence if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Rosales-Bruno*, 789 F.3d at 1256 (internal quotation marks omitted). Thus, deciding whether a district court has imposed a substantively unreasonable sentence involves an inquiry into whether the statutory factors in 18 U.S.C. § 3553(a) support the sentence.  *See Gonzalez*, 550 F.3d at 1324.  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound

discretion of the district court . . . ." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

Medina argues that his sentence was substantially harsher than that received by his co-defendant Hernandez. He reasons that this demonstrates an unwarranted sentencing disparity between the sentence he received and what Hernandez received. While it is true 18 U.S.C. § 3553(a)(6) counsels courts to avoid unwarranted disparities when sentencing defendants, "[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." *United States v. Regueiro*, 240 F.3d 1321, 1325-26 (11th Cir. 2001). Section 3553(a)(6) "seeks only to avoid *unwarranted* sentencing disparities." *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009) (emphasis added) (internal quotation marks omitted). Thus, "a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." *United States v. Wallace*, 573 F.3d 82, 97 (1st Cir. 2009) (internal quotation marks omitted). This is because "adjust[ing] the sentence of a co-defendant in order to cure an apparently unjustified disparity between defendants in an individual case [would] simply create another, wholly unwarranted disparity between the defendant receiving the adjustment and all similar offenders in other cases." *United States v. Chotas*, 968 F.2d 1193, 1198 (11th Cir. 1992).

14

Even were we to compare Medina's sentence to that of Hernandez, Medina has failed to establish that the discrepancy between the sentence he received and the sentence Hernandez received is unwarranted. Medina worked directly under Ramirez, one of the leaders of the conspiracy. And in his role as courier, he transported hundreds of kilograms of narcotics and smuggled millions of dollars in drug proceeds. In contrast, Hernandez was recruited into the conspiracy by family members and had little-to-no understanding of the broader trafficking conspiracy. Although she did transport drug proceeds, she only appears to have done so on approximately three occasions. Given the differences between Hernandez's conduct and Medina's conduct, and Medina's failure to identify any comparable criminal defendant who received a materially different sentence, we can identify no abuse of discretion in the district court's conclusion that Medina's conduct warranted a harsher sentence.

Even were we to conclude there was an unwarranted disparity between Medina's sentence and that of Hernandez, we would nonetheless uphold Medina's sentence as reasonable because he has failed to demonstrate that this disparity outweighed the other § 3553(a) factors. The need to avoid sentencing disparities is only one of several factors district courts consider when sentencing a defendant. *See* 18 U.S.C. 3553(a). And district courts are entitled to decide the weight accorded to each factor. *Clay*, 483 F.3d at 743. Aside from pointing to

15

Hernandez's sentence, Medina presents no reason to believe that his sentence is substantively unreasonable given all of the other § 3553(a) factors. If anything, the fact that his sentence is within the guidelines range counsels in favor of its reasonableness, as does the fact that his sentence is below the statutory maximum. *See Hunt*, 526 F.3d at 746; *see also Gonzalez*, 550 F.3d at 1324. As such, Medina has not satisfied his burden of showing that his sentence is substantively unreasonable. *See Tome*, 611 F.3d at 1378.

## III.  CONCLUSION

Medina has failed to demonstrate the district court committed a clear error in applying a dangerous-weapons enhancement to the calculation of his guidelines range or denying him a minor role reduction. He has also failed to show that the district court abused its discretion by imposing a substantively unreasonable sentence. Accordingly, we affirm.

**AFFIRMED.**